IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

MARSHA NICHOLSON                                            PLAINTIFF

vs.                          Civil No. 1:16-cv-01031-BAB

NANCY A. BERRYHILL                                       DEFENDANT
Acting Commissioner, Social Security Administration[1]

**MEMORANDUM OPINION**

Marsha Nicholson ("Plaintiff") brings this action under 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("The Act").

The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (ECF No. 5).[2] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1.**      **Background:**

Plaintiff protectively filed her disability applications for DIB on June 17, 2013, and for SSI on June 18, 2013. (ECF No. 11, pp. 18). In her applications, Plaintiff alleges being disabled due to:

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The docket numbers for this case are referenced by the designation "ECF No. ___." The transcript pages for this case are referenced by the designation "ECF No. ___, p. ___."

hepatitis C; bulging and herniated discs in back; anxiety; chronic obstructive pulmonary disease ("COPD"), edema; vertigo; hyperlipidemia; neuropathy; and, depression. (ECF No. 11, p. 230). Plaintiff alleges an onset date of May 31, 2013. (ECF No. 11, pp. 18, 226). These applications were denied initially and again upon reconsideration. (ECF No. 11, pp. 55-118).

Thereafter, Plaintiff requested an administrative hearing on her denied applications, and this hearing request was granted. (ECF No. 11, pp. 141-45). Plaintiff's administrative hearing was held on October 22, 2014, in Arkansas. (ECF No. 11, pp. 36-54). Plaintiff was present and was represented by Mike Sherman. *Id.* Plaintiff and VE Mac Welch testified at this hearing. *Id.* At the time of this hearing, Plaintiff was fifty-one (51) years old, which is defined as a "person closely approaching advanced age" under 20 C.F.R. §§ 404.1563(d), 416.963(d). (ECF No. 11, p. 40). As for her level of education, Plaintiff earned a high school diploma and completed classes to become a certified nursing assistant ("CNA"). *Id.*

After this hearing, on February 26, 2015, the ALJ entered an unfavorable decision denying Plaintiff's applications for DIB and SSI. (ECF No. 11, pp. 15-28). In this decision, the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2017. (ECF No. 11, p. 20, Finding 1). The ALJ found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since May 31, 2013, her alleged onset date. (ECF No. 11, p. 20, Finding 2). The ALJ determined Plaintiff had the following severe impairments: mild lumbar degeneration, COPD, obesity, major depressive disorder, and post-traumatic stress disorder ("PTSD"). (ECF No. 11, pp. 20-21, Finding 3). Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Part 404 ("Listings"). (ECF No. 11, pp. 21-23, Finding 4).

The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC"). (ECF No. 11, pp. 23-27, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints and found her claimed limitations were not entirely credible. *Id.* Second, the ALJ determined Plaintiff retained the RFC to perform:

> light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she is further limited in that she can occasionally stoop, crouch, crawl, and kneel. In addition, given her moderate limitations in social functioning and in terms of concentration, persistence, and pace, [Plaintiff] is able to perform work where interpersonal contact is routine but superficial, where the complexity of tasks are learned by experience with several variables, where judgment is within limits, and which involves little supervision for routine tasks and detailed supervision for non-routine tasks (i.e., [Plaintiff] is able to perform work at the semi-skilled level).

*Id*.

The ALJ then determined Plaintiff was unable to perform her Past Relevant Work ("PRW"). (ECF No. 11, p. 27, Finding 6). The VE testified at the administrative hearing regarding this issue. (ECF No. 11, pp. 51-53). Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs existing in significant numbers in the national economy Plaintiff could perform, such as a personal care attendant, which has a DOT code of 309.674-014, with approximately three hundred thousand (300,000) jobs in the national economy and four thousand (4,000) jobs in the regional economy, and as a companion, which has a DOT code of 309.677-010, with approximately two hundred thousand (200,000) jobs in the national economy and three thousand (3,000) jobs in the regional economy. (ECF No. 11, pp. 27-28, Finding 10). Because jobs exist in significant numbers in the national economy which Plaintiff can perform, the ALJ also determined Plaintiff had not been under a disability, as defined by the Act, from May 31, 2013, through February 26, 2015, the date of the ALJ's decision. (ECF No. 11, p. 28, Finding 11).

Thereafter, on February 18, 2015, Plaintiff requested review of the hearing decision by the Appeals Council. (ECF No. 11, pp. 12-14). The Appeals Council denied Plaintiff's request on March 30, 2016. (ECF No. 11, pp. 5-11). On April 25, 2016, Plaintiff filed the present appeal with this Court. (ECF No. 1). The Parties consented to the jurisdiction of this Court on April 26, 2016. (ECF No. 5). This case is now ready for decision.

**2.      Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *see* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *see Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001).

As long as there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *see Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *see Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *see Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines

a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3); 1382c(a)(3)(D).  A plaintiff must show his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months.  *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation.  He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity ("RFC") to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.  *see Cox,* 160 F.3d at 1206;  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached.  *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416(a)(4)(v).

**3.     Discussion:**

In her appeal brief, Plaintiff argues in general for reversal, that the ALJ's findings that Plaintiff was not disabled is not supported by substantial evidence on the record as a whole. (ECF No. 12).

First, Plaintiff argues that the ALJ's determination that Plaintiff's severe mental impairments

limit her to semi-skilled work is not a significant enough limitation because the ALJ determined Plaintiff was unable to return to her PRW which itself was semi-skilled. (ECF No. 12, p. 16). Plaintiff's argument, however, is without merit, because the ALJ determined Plaintiff was unable to return to her PRW because of the exertion requirements. (ECF No. 11, p. 27). The ALJ noted that the DOT classified Plaintiff's PRW at the medium exertion level and that the VE testified that Plaintiff's PRW was frequently performed at the heavy exertion level. *Id.* I find, therefore, that the ALJ's determination that Plaintiff was able to perform semi-skilled work was consistent with the ALJ's determination Plaintiff was unable to perform her PRW.

    Next, Plaintiff contends her major depressive disorder results in more limitations than those assessed by the ALJ because Plaintiff's GAF scores demonstrate a greater degree of severity. The ALJ is permitted to consider Plaintiff's GAF scores for the purpose of determining the severity of Plaintiff's medically determinable impairments, but such a score serves only as a snapshot in time of Plaintiff's functioning. *see Kluesner v. Astrue*, 607 F.3d 533, 535 (8th Cir. 2010). The ALJ noted Plaintiff's GAF scores ranged from 35 to 55 and stated the scores were "indicative of moderate to major functional impairment." (ECF No. 11, p. 26). The ALJ proceeded to analyze Plaintiff's GAF scores in light of the other evidence in the record as a whole such as treatment notes and physicians' opinions, and determined "the evidence of record is sufficient to support findings of moderate limitations in social functioning in terms of concentration persistence, and pace." *Id.* The ALJ engaged in a thorough analysis of the record as a whole and I find substantial evidence supports the ALJ's determination. Additionally, I note that even if it were possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *see Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

Third, Plaintiff contends that the ALJ improperly discounted Plaintiff's subjective complaints with regard to her mental impairments because Plaintiff's non-compliance with treatment was itself a result of her mental impairments. (ECF No. 12, pp. 17-18).  Plaintiff does not support her assertion, however, with reference to evidence in the record.  The ALJ stated as follows:

> The medical record contains few if any records of continuing mental health therapy since August of 2014.  When asked about recent mental health treatment at the hearing, [Plaintiff] indicated that she has not returned for therapy since that time. Her failure to comply with recommended mental health therapy in recent months raises questions as to the credibility of her allegations of disabling limitations arising out of her mental impairments.

(ECF No. 11, p. 26).  The lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration for the ALJ when evaluating Plaintiff's allegations of disability due to a mental impairment.  *see Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007). Evidence of symptom-free periods and noncompliance with treatment or medication use could be symptoms of the mental impairments themselves, depending on the nature of Plaintiff's particular impairments.  *see Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996).  In the present case, however, the record does not contain any evidence Plaintiff's noncompliance was the result of her mental impairments themselves.  At the Administrative hearing on this issue the ALJ asked, "So when you first started really trying to get treatment for your mental health issues, you were in northeast Arkansas. And then you've moved down here since then.  Have you tried to establish care with anyone here?"  (ECF No. 11, p. 46).  Plaintiff responded, "I went one time here in Camden. And I went to see the doctor and they gave me some of those medicine changes.  And so far I haven't been back yet."  *Id.*  Treatment notes in the record do not contain evidence Plaintiff's mental impairments caused her to be unmotivated to comply with her treatment, nor did Plaintiff claim as

7

such to the ALJ when he asked her directly if she was receiving further treatment at the time. I find, therefore, the ALJ properly considered Plaintiff's noncompliance with treatment in assessing the credibility of her subjective complaints.

Finally, Plaintiff contends the ALJ failed to fully and fairly develop the record because he should have re-contacted Dr. Wells after Plaintiff was hospitalized in May 2014. (ECF No. 12, pp. 18- 20). The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *see Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). However, the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record. *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (quoting *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994). While "[a]n ALJ should recontact a treating or consulting physician if a critical issue is undeveloped," "the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted). The ALJ analyzed the available records from Plaintiff's hospitalization for suspected overdose on her husband's Ambien and determined "records from this multi-day psychiatric hospitalization indicate a level of functioning that is not disabling." (ECF No. 11, p. 26). Plaintiff was admitted for treatment on May 31, 2014, and discharged on June 3, 2014, with the following notation:

> During the hospital stay, she was alert and oriented x3, up ad lib, able to participate in the milieu. She was monitored for signs and symptoms of depression and also for any kind of self-harm thoughts or behaviors. She was placed on Wellbutrin extended release for mood stability along with citalopram and also received clonazepam at bedtime for anxiety. She was compliant with her medications without any untoward side effects. She showed positive improvement throughout her hospital stay with decreasing levels of depression and denial of suicidal ideation. She attended

    therapeutic groups. Her attitude was cooperative, mood appropriate, affect appropriate, thoughts intact and based on her improvement, continued denial of suicidal ideation, and completion of a safety crisis plan and aftercare plan, she was recommended for discharge.

(ECF No. 11, p. 465). The ALJ analyzed Plaintiff's treatment records after her discharge and noted that in the two months immediately following her discharge from the hospital she made good progress with her therapy, but that she discontinued treatment in or after August 2014. (ECF No. 11, p. 26).

    The ALJ had before him the evaluations and treatment records of numerous healthcare providers which, as more specifically set forth above, provided sufficient evidence for the ALJ to make an informed decision regarding Plaintiff's alleged impairments. I also note that other evidence in the record, including Plaintiff's own statements, constituted evidence regarding her limitations, and that the existing medical sources contained sufficient evidence for the ALJ to make a determination regarding Plaintiff's alleged impairments. I therefore find the ALJ satisfied his duty to fully and fairly develop the record.

**4.**    **Conclusion:**

    Based on the foregoing, the undersigned finds the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

    **ENTERED this 28th day of July 2017.**

                                   /s/ Barry A. Bryant
                                   HON. BARRY A. BRYANT
                                   U. S. MAGISTRATE JUDGE